# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# TYLER DIVISION

| | | |
|---|---|---|
| **CLEAR WITH COMPUTERS, LLC** § | | |
| § | | |
| **Plaintiff,** § | | |
| § | | |
| vs. § | **CASE NO. 6:09CV481** | |
| § | **PATENT CASE** | |
| **BERGDORF GOODMAN, INC., et al.,** § | | |
| § | | |
| **Defendants.** § | | |
| § | | |

## MEMORANDUM OPINION

This opinion construes terms in U.S. Patent No. 5,615,342.

## BACKGROUND

Clear with Computers, LLC ("CWC") asserts the '342 patent[1] in both *CWC v. Bassett Furniture Industries, Inc.*, Case No. 6:09cv95, and *CWC v. Hyundai Construction Equipment, Inc.*, Case No. 6:09cv139. Identical terms are at issue in both cases, and the parties' propose nearly identical constructions in both cases. Those cases have been consolidated with *CWC v. Bergdorf Goodman, Inc.*, Case No. 6:09cv481.[2]

CWC also currently asserts the '342 patent in *CWC v. Hyundai Motor America, Inc.* ("HMA"), Case No. 6:09cv479. Although the Court held a combined *Markman* hearing with these cases and the *HMA* case, only a few terms overlap between the cases, and the Court will issue a

---

[1] CWC also originally asserted U.S. Patent No. 5,367,627, but the Federal Circuit has recently invalidated that patent.

[2] U.S. Patent No. 7,606,739 is also asserted in the *Bergdorf* case. That patent is set for claim construction hearing in April 2011.

1

separate opinion in that case.

The Court has previously construed the '342 patent in *Orion IP, LLC v. Xerox Corp.*, Case No. 6:07-cv-138, Docket No. 805, August 21, 2008 (the "*Xerox* Opinion"); *Orion IP, LLC v. Staples, Inc.*, 406 F. Supp. 2d 717, 724 (E.D.Tex. 2005) Case No. 2:04-cv-297, Docket No. 307, December 15, 2005 (the "*Staples* Opinion"); and *Orion IP, LLC v. Hyundai Motor America*, Civil Action No. 6:05-cv-322, Docket No. 488, April 10, 2007 (the "*Hyundai* Opinion").

The '342 patent generally describes an electronic system for creating customized product proposals. The system queries a user to determine a customer's needs and interests and then uses stored pictures and text segments to create a customized proposal that appeals to the customer.

## APPLICABLE LAW

"It is a 'bedrock principle' of patent law that 'the claims of a patent define the invention to which the patentee is entitled the right to exclude.'" *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (en banc) (quoting *Innova/Pure Water Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1115 (Fed. Cir. 2004)). In claim construction, courts examine the patent's intrinsic evidence to define the patented invention's scope. *See id.*; *C.R. Bard, Inc. v. U.S. Surgical Corp.*, 388 F.3d 858, 861 (Fed. Cir. 2004); *Bell Atl. Network Servs., Inc. v. Covad Commc'ns Group, Inc.*, 262 F.3d 1258, 1267 (Fed. Cir. 2001). This intrinsic evidence includes the claims themselves, the specification, and the prosecution history. *See Phillips*, 415 F.3d at 1314; *C.R. Bard, Inc.*, 388 F.3d at 861. Courts give claim terms their ordinary and accustomed meaning as understood by one of ordinary skill in the art at the time of the invention in the context of the entire patent. *Phillips*, 415 F.3d at 1312–13; *Alloc, Inc. v. Int'l Trade Comm'n*, 342 F.3d 1361, 1368 (Fed. Cir. 2003).

The claims themselves provide substantial guidance in determining the meaning of particular

claim terms. *Phillips*, 415 F.3d at 1314. First, a term's context in the asserted claim can be very instructive. *Id*. Other asserted or unasserted claims can also aid in determining the claim's meaning because claim terms are typically used consistently throughout the patent. *Id*. Differences among the claim terms can also assist in understanding a term's meaning. *Id*. For example, when a dependent claim adds a limitation to an independent claim, it is presumed that the independent claim does not include the limitation. *Id*. at 1314–15.

"[C]laims 'must be read in view of the specification, of which they are a part.'" *Id*. (quoting *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 979 (Fed. Cir. 1995) (en banc)). "[T]he specification 'is always highly relevant to the claim construction analysis. Usually, it is dispositive; it is the single best guide to the meaning of a disputed term.'" *Id*. (quoting *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996)); *Teleflex, Inc. v. Ficosa N. Am. Corp.*, 299 F.3d 1313, 1325 (Fed. Cir. 2002). This is true because a patentee may define his own terms, give a claim term a different meaning than the term would otherwise possess, or disclaim or disavow the claim scope. *Phillips*, 415 F.3d at 1316. In these situations, the inventor's lexicography governs. *Id*. Also, the specification may resolve ambiguous claim terms "where the ordinary and accustomed meaning of the words used in the claims lack sufficient clarity to permit the scope of the claim to be ascertained from the words alone." *Teleflex, Inc.*, 299 F.3d at 1325. But, "'[a]lthough the specification may aid the court in interpreting the meaning of disputed claim language, particular embodiments and examples appearing in the specification will not generally be read into the claims.'" *Comark Commc'ns, Inc. v. Harris Corp.*, 156 F.3d 1182, 1187 (Fed. Cir. 1998) (quoting *Constant v. Advanced Micro-Devices, Inc.*, 848 F.2d 1560, 1571 (Fed. Cir. 1988)); *see also Phillips*, 415 F.3d at 1323. The prosecution history is another tool to supply the proper context for claim

construction because a patent applicant may also define a term in prosecuting the patent. *Home Diagnostics, Inc., v. Lifescan, Inc.*, 381 F.3d 1352, 1356 (Fed. Cir. 2004) ("As in the case of the specification, a patent applicant may define a term in prosecuting a patent.").

Although extrinsic evidence can be useful, it is "'less significant than the intrinsic record in determining the legally operative meaning of claim language.'" *Phillips*, 415 F.3d at 1317 (quoting *C.R. Bard, Inc.*, 388 F.3d at 862). Technical dictionaries and treatises may help a court understand the underlying technology and the manner in which one skilled in the art might use claim terms, but technical dictionaries and treatises may provide definitions that are too broad or may not be indicative of how the term is used in the patent. *Id*. at 1318. Similarly, expert testimony may aid a court in understanding the underlying technology and determining the particular meaning of a term in the pertinent field, but an expert's conclusory, unsupported assertions as to a term's definition is entirely unhelpful to a court. *Id*. Generally, extrinsic evidence is "less reliable than the patent and its prosecution history in determining how to read claim terms." *Id*.

## CLAIM CONSTRUCTION

**inputting into the computer a plurality of customer answers to the questions** (claim 1)

Defendants propose this term be construed as "the user of the computer inputs into the computer a plurality of customer answers to the [computer generated] questions."[3] CWC contends that this term does not require construction or, if the term does require construction, that it be given its plain and ordinary meaning. The parties' proposed constructions raise two issues: whether the user, as opposed to the customer, must input the answers and whether the questions must be

---

[3] Defendant Kate Spade proposes including "computer generated"; the remaining Defendants do not include "computer generated" in their proposed construction.

computer-generated.

The Court previously determined that many of the words in this phrase did not require construction. *Staples* Opinion, at 6–13; *Hyundai* Opinion, at 18–20. In construing "customer" the Court identified separate roles for the user of the computer and the customer but also stated that the same person could perform both roles. *Staples* Opinion at 6.

The *Bassett* Defendants do not challenge the Court's previous statements but say they want a construction because the jury will need to determine whether a single entity performs all of the steps to determine infringement. The *Bassett* Defendants contend that "user" is implicit in this step because the user was presented with questions in step 1. Kate Spade argues that the user and customers must be different individuals, contrary to the Court's previous statements, and there is a presumption that different words have different meanings. Kate Spade contends this is consistent with how the user and customer are treated in the claims and specification and how the invention is described in the preferred embodiment. Kate Spade contends the specification does not use the terms interchangeably and the user functions as an intermediary between the customer and the computer.

The Court correctly construed this phrase and its terms in the previous cases. Defendants' proposed construction improperly limits the claims to the preferred embodiment, where the roles of the user and customer are fulfilled by different individuals. Defendants misapply the Federal Circuit cases they cite, and the Court's previous statements are consistent with those cases. The Court has not stated that user and customer are synonymous. Rather, the Court has stated that they are two different roles that may be fulfilled by the same individual. It is not inconsistent with the specification for one person to perform both roles. The claims themselves do not specify who

performs the inputting step, and the Court will not read in the limitation that it is performed by the user. Moreover, CWC does not contest that a single or controlling entity must perform all of the steps and states it will argue that Defendants carry out or control each of the steps. Accordingly, the Court does not adopt Defendants' proposed construction.

Kate Spade also contends the Court should construe "questions" as "computer-generated questions." Kate Spade contends the applicant limited "questions" to "computer-generated questions" to overcome an obviousness rejection based on the Donald and Yourick patents.

The relevant rejection concluded that although the Donald patent failed to disclose the "presenting . . . a plurality of questions relating to features and uses of the products" step, the Yourick patent did disclose that step. The examiner characterized Yourick as disclosing a system that "queries the user for preferences by asking questions . . ." and "presenting items which most likely appeal to the user. The examiner noted that it would have been obvious to combine the teachings of Donald and Yourick. The cited portion of Yourick relied on by the examiner discloses:

> The gift segment 45 assists the user in selecting a gift. It is based on a marketing theory which asserts that people should be categorized by their life styles and values when choosing suitable gifts, rather than more typical things like income or age. Thus the gift suggestion segment 45 begins by showing 6 images of people and asks the user to choose which picture best describes the gift recipient. When a selection is made, a number of gift ideas, such as four, are presented which have been determined most appreciated by the group chosen. If the user is not pleased with these suggestions, the system will ask more typical questions, such as for instance, the hobbies and age of the recipient, and a desired price range of the gift, and then additional suggestions will be made based upon these selections.

In the first instance, the gift suggestion segment 45 presents a question as to a lifestyle category of gift recipient. The query is not one relating to products; only the system response is related to products. Yourick then further describes that a second level of inquiry is made as to further defining characteristics of the gift recipient. Again, the questions do not relate to product features or uses. The questions in both instances are inquiries about the gift recipient.

The patentee's response focused on the failure of the references to disclose a system that uses customer answers to questions about product features and uses. The mention of "computer-generated" was superfluous to the remarks and unnecessary to the point of distinction over the Yourick reference. Moreover, the video merchandising system described in Yourick is itself computer-based, as shown in Fig. 1 and described at col. 3, lines 56-58. In addition, gift segment 45 is shown as part of the system software flowchart diagrammed in Figs. 5a and 5b. Thus, clearly no distinction was or could have been made over Yourick based on questions being "computer-generated." Kate Spade's argument based on the prosecution history is without merit, and the Court does not adopt a "computer-generated" limitation. Accordingly, the Court does not adopt Defendants' proposed construction. Having resolved the parties' dispute, the term does not require construction. The Court gives the term its plain and ordinary meaning.

**receiving into the computer customer answers of the customer to the plurality of questions** (claim 11)

Defendants propose this term be construed as "a customer provides answers to the plurality of questions that are input by the user of the computer and received by the computer." CWC contends that this term does not require construction or, if the term does require construction, that it be given its plain and ordinary meaning.

7

The *Bassett* Defendants contend the term is ambiguous about whether the customer answers must be provided by the customers and the structure of claim language requires that customer provide the answers. CWC agrees that the claim language "leaves no doubt that it is the customer who determines what the answers are" but contends this is another attempt by Defendants to negate that the customer and user may be the same person.

This term presents the same disputes as the previous term. For the same reasons, this term does not require construction.

**environment/ product environment picture** (claims 1, 11)

Defendants propose "environment" be construed as "a background image that does not include a blank, solid colored, shaded, monochromatic, or patterned backdrop." The *Bassett* Defendants argue that "product environment picture" means "a background for the product that relates to the setting in which the product may be used." In the related *HMA* case, HMA contends that "product environment picture" means "a real-world setting of potential interest to a customer, and therefore not including a blank, solid-colored, shaded or patterned backdrop." The *Bassett* Defendants contend the two proposals carry the same meaning. CWC contends that these terms do not require construction or, if they do require construction, that they be given their plain and ordinary meaning.

Previously, the Court did not construe these terms in light of Orion/CWC's statement that it would not argue such things are backgrounds. The *Bassett* Defendants argue these terms need construction because a jury may not understand that these things are not backgrounds. Defendants are improperly attempting to inject a non-infringement position into claim construction. Defendants are free to ask CWC's expert at trial if such things can be an environment. Moreover, given CWC's

8

stipulation on the issue, Defendants can move for summary judgment on this ground if it really is at issue. Defendants have not otherwise shown why these terms need construction. Accordingly, the Court declines to construe the terms as they have an ordinary meaning that does not otherwise appear to be disputed.

**Selecting** (claims 1, 11)

Defendants propose this term be construed as "choosing from multiple options." CWC contends that this term does not require construction or, if the term does require construction, that it be given its plain and ordinary meaning.

Defendants argue that for the selection process to have meaning, a selection from more than one option must be made. Further, the specification describes storing a plurality of pictures, which implies the selection is made from multiple options. CWC argues that Defendants are trying to introduce a "separate and distinct" limitation, which the Court rejected in previous cases. CWC agrees that in the preferred embodiment, the system chooses from multiple environments, product pictures, and text, but argues the claim language does not require that multiple options be present and there may be only one option to choose from.

This term does not require construction. Defendants' proposed construction rests on a view that the specification disclaims a single option embodiment. However, neither the term itself nor the specification directs a "multiple option" requirement. Accordingly, Defendants' proposed construction is overly limiting, and the Court does not adopt it.
9

**Selecting a particular product picture in response to at least one of the customer answers; selecting a particular product environment picture in response to at least one of the customer answers; selecting a particular text segment in response to at least one of the customer answers** (claim 1) and **automatically selecting, in response to at least one of the customer answers, a product image, a product environment image and a text segment** (Claim 11)

Defendants contend the "selecting" phrase should be construed as "selecting a particular product picture in response to at least one of the customer answers; selecting a particular product environment picture in response to at least one of the customer answers; selecting a particular text segment in response to at least one of the customer answers; wherein the particular product picture, particular product environment picture, and particular text segment are selected in three separate steps" and the "automatically selecting" phrase construed as "automatically selecting, in response to at least one of the customer answers, a product image, a product environment image and a text segment, wherein the product image, product environment image, and text segment, are selected in three separate steps." Defendants' constructions incorporate their proposed construction for "selecting." CWC contends that these terms do not require construction or, if they do require construction, that they be given their plain and ordinary meaning.

The Court previously said these terms do not require construction because "the claim language is sufficiently clear that a particular product picture, a particular product environment picture, and a particular text segment are selected in three separate steps." *Xerox* Opinion at 6–7; *Staples* Opinion at 24. The *Bassett* Defendants state a construction is necessary because CWC has declined to stipulate that the Court's statements accurately characterize the scope of the claims and the jury needs the instruction to avoid the possibility that it will not appreciate the limitation and consider one or two selections sufficient to meet the claim limitations. Kate Spade argues that in the *Hyundai* trial, CWC relied on this construction to avoid the prior art. Although Defendants argue

a construction is necessary because CWC has refused to stipulate to their construction, CWC has not offered a construction that contradicts the Court's earlier statements about the claim scope. Thus, there does not appear to be an actual claim scope dispute among the parties. As the Court has previously stated, the claim language is clear on its face that a particular product picture, product environment picture, and text segment are selected in three separate steps. *See Xerox* Opinion at 6–7; *Staple*s Opinion at 24. As the claim language is clear and there is no actual claim scope dispute, these terms do not require a construction.

**Proposal** (claims 1, 3, 4, 11, 13, 14)

Defendants contend "proposal" should be construed as "printed information intended for conveyance to a potential customer." CWC argues "proposal" should be construed as it was in the prior cases, "information intended for conveyance to a potential customer."

Defendants contend the proposal must be printed. They argue the Abstract distinguishes between electronic proposals and printed proposals and the Abstract teaches that the proposal template only becomes a proposal when it is printed. Defendants contend that printed proposals are not merely the preferred embodiment, but are the invention. Further, Defendants contend the '342 patent relies on the 1992 parent application's filing date, and the parent application only teaches printed proposals; thus the '342 patent cannot expand beyond that scope. CWC argues "proposal" is not limited to printed proposals. Printing is described as one embodiment, and the patent specifically says it is not limited to the one embodiment. Further, even at the time of the parent application, a person of ordinary skill in the art would understand that the proposal did not necessarily need to be printed to be effectively used.

While the preferred embodiment describes printed proposals, there is no clear disclaimer in the specification that restricts the written description or claims to a printed proposal. Moreover, one of ordinary skill would understand that a proposal on a screen could be used in lieu of a print out of what the screen displays. Accordingly, the Court does not adopt Defendants' proposed construction. The Court construes "proposal" as it did in the previous cases: "information intended for conveyance to a potential customer."

**generating a customized proposal for the customer using the particular product picture, the particular product environment picture and the particular text segment** (Claim 1) and **generating a proposal customized for the customer using the selected product image, the selected product environment image and the selected text segment** (Claim 11)

Defendants contend these terms mean "generating a customized proposal for the customer using the particular product picture, the particular product, environment picture and the particular text segment, wherein for the same product picture, the product environment picture and text segment will differ from customer-to-customer depending on the customer's answers to the questions" (claim 1) and "generating a proposal customized for the customer using the selected product image, the selected product environment image and the selected text segment, wherein for the same product picture, the product environment picture and text segment will differ from customer-to-customer depending on the customer's answers to the questions" (claim 11). CWC contends that these terms do not require construction or, if they do require construction, they should be given their plain and ordinary meaning. The parties dispute whether the "customized proposal" requires that "the product picture, the product environment picture and text segment will differ from customer-to-customer depending on the customer's answers to the questions." In previous cases, the Court determined this term did not require construction.

The *Bassett* Defendants argue that the proposals are custom built for each customer based on customer responses. The *Bassett* Defendants do not argue that customers who answer questions in a similar manner cannot have the same proposal, but that there can be no infringement if all customers get the same proposal regardless of answers and the specification teaches against "canned" proposals. Kate Spade argues that the specification teaches that for the proposal to be customizable, the content of the proposal must be based on the customer's answers and for "customized proposal" to have meaning it must be dynamically generated based on customer's answers. *See* col. 5:37–39 ("each combination of pictures for a finished template need not be pre-stored, since the system dynamically builds a template"); 2:31–33. Further, during prosecution, the applicant distinguished Yourick because he did not associate the user's responses with product pictures, environment, and text.

CWC argues that Defendants' construction implies that each customized proposal must differ from customer to customer but this is not required by claims.

Defendants' proposed construction is too narrow. Although Defendants concede that customers who answer the questions in the same manner will receive the same proposals, their construction prohibits that because it requires that the proposal "differ from customer-to-customer." From Defendants' arguments, they appear to be attempting to preclude the possibility that customers could receive the same proposal regardless of their answers. However, the claims require that the product picture, product environment picture, and text segment each be selected in response to at least one of the customer's answers. Further limiting the claims is improper.

Defendants' proposed construction also seeks to exclude "canned" proposals. However, whether "canned" proposals satisfy this limitation is an infringement determination that should be made by a jury. This term does not require construction.

## CONCLUSION

For the foregoing reasons, the Court interprets the claim language in this case in the manner set forth above. For ease of reference, the Court's claim interpretations are set forth in a table as Appendix A.

**So ORDERED and SIGNED this 5th day of January, 2011.**

_____
**LEONARD DAVIS
UNITED STATES DISTRICT JUDGE**

| Claim Term/Phrase and Asserted Claim(s) Containing Term/Phrase | Court's Construction |
|---|---|
| inputting into the computer a plurality of customer answers to the questions (Claims 1) | No construction |
| receiving into the computer customer answers of the customer to the plurality of questions (Claim 11) | No construction |
| environment / product environment picture (Claims 1 and 11) | No construction |
| selecting (Claims 1 and 11) | No construction |
| selecting a particular product picture in response to at least one of the customer answers<br><br>selecting a particular product environment picture in response to at least one of the customer answers<br><br>selecting a particular text segment in response to at least one of the customer answers (Claim 1) | No construction |
| automatically selecting, in response to at least one of the customer answers, a product image, a product environment image and a text segment (Claim 11) | No construction |
| proposal (Claims 1,3 4, 11, 13, and 14) | information intended for conveyance to a potential customer |
| generating a customized proposal for the customer using the particular product picture, the particular product environment picture and the particular text segment (Claim 1) | No construction |
| generating a proposal customized for the customer using the selected product image, the selected product environment image and the selected text segment (Claim 11) | No construction |